THE PEOPLE OF THE STATE OF NEW YORK on the relation of WILLIS H. ADSIT, HAMILTON N. TOWNER AND ARTEMUS H. WHITNEY, Commissioners for the Improvement of the Boquet river, *v.* WILLIAM F. ALLEN, Comptroller of the State of New York.

(GENERAL TERM, THIRD DISTRICT, SEPTEMBER, 1869.)

The legislature having passed a law by a majority vote, appropriating money for the purpose of removing obstructions from, and improving the navigation of, the navigable portion of the Boquet river; a river flowing into Lake Champlain, and navigable therefrom for three miles, for boats of light burden, used in the transportation of coal, iron and other commodities.—*Held*, the appropriation was neither for local nor private purposes, and the law was constitutionally enacted and valid. PECKHAM, J. dissenting.

It seems, when there may be doubt, as to whether an appropriation is or is not for local or private purposes, and it is not made to appear that, in point of fact, it is for one or the other of such purposes, the presumption will be in favor of the constitutionality of the legislative proceedings. Per HOGEBOOM, J.

In the application of the clause of the constitution, which makes a two-third vote of the legislature requisite for the passage of bills, "appropriating the public moneys or property, for local or private purposes;" where an improvement ordered is clearly of a local character, the judicial department may pronounce it unconstitutional; but where the question is one of degree or extent, and not of the legal effect of a palpable fact, it falls within the domain of the legislature. Id.

The practice of the legislature, with reference to various acts making appropriations of money for purposes similar to the act in question, pointed out; and the meaning of the terms "local" and "private" commented upon and explained. Id.

*Held*, further, a mandamus would lie against the comptroller, to compel payment of the moneys appropriated, on his refusal to pay the same.

THIS case was submitted to the court under the provisions of § 372 of the Code of Procedure, upon the following facts :

The legislature, at the session of 1869, passed, by a majority vote, the question being taken by ayes and nays, and duly entered on the journals, three-fifths of all the members elected to either house being present, an act, of which the following is a copy :

An Act for the improvement of the navigation of the Boquet river.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows :*

SECTION 1. The sum of two thousand five hundred dollars for each year, of the years eighteen hundred and sixty-nine, and eighteen hundred and seventy, is hereby appropriated out of the moneys in the treasury belonging to the general fund, not otherwise appropriated, for the purpose of removing obstructions and improving the navigation of Boquet river, from its mouth to Willsborough falls, which sum of money shall be expended by and under the direction of Willis H. Adsit, of Willsborough, Hamilton N. Towner and Artemus H. Whitney, of Essex, in the county of Essex, commissioners hereby appointed for that purpose.

§ 2. The said commissioners, before entering upon the duties of their office, shall execute and file in the office of the comptroller a bond, to the people of this State, with sufficient sureties, to be approved of by the comptroller, in the penal sum of ten thousand dollars, for the faithful performance of their duties.

§ 3. The aforesaid commissioners shall receive two dollars per day for each day actually employed in the duties of said office, out of the money hereby appropriated, and shall annually report their proceedings on or before the first day of December in each year, verified by their oath to the comptroller.

§ 4. The comptroller shall have power to fill vacancies that may occur in said board of commissioners.

§ 5. This act shall take effect immediately.

This act was certified by the president of the senate and the speaker of the assembly, and signed by the governor, but did not receive the assent of two-thirds of the members elected to each branch of the legislature.

The relators were the commissioners named in said act.

They had filed their bond in the form and with sureties as prescribed in said act, which bond had been approved by, and filed with the comptroller.

The relators had duly demanded of the defendant, as comptroller, the sum of $2,500 for the purposes specified in the first section of said act. The Boquet river empties into Lake Champlain, in Essex county. It is and has been from the earliest settlement of the county, navigable for boats of light burden, used in the transportation of coal, iron and other commodities, from its mouth to Willsborough falls, a distance of not more than three miles.

The defendant, as comptroller, had refused to pay said amount, upon the ground that the appropriation was for "local or private" purposes, and that therefore the bill should have been passed by a two-thirds vote under the provisions of section 9, of article 1, of the constitution.

The relators claimed that the appropriation was not for a private or local purpose, and that the 9th section of article 1, of the constitution did not apply, and they asked for a peremptory mandamus against the defendant, requiring him to pay the said sum of $2,500; and the comptroller denied the rights of the said relators to such relief, or to any relief.

Upon these facts the question at issue upon the application of the relators was submitted for adjudication by the court, under the provisions of the Code before mentioned.

*Matthew Hale*, for the relators.

*Amasa J. Parker*, for the defendant.

Present—INGALLS, HOGEBOOM and PECKHAM, JJ.

By the Court—HOGEBOOM, J. The act in question, which appropriates $5,000 out of the general fund, for the purpose of removing obstructions and improving the navigation of Boquet river, from its mouth to Willsborough falls, under the direction of commissioners, is assailed on the ground of its

The People *v.* Allen.

unconstitutionality, as being a bill appropriating the public money or property for local or private purposes, and therefore requiring the assent of two-thirds of the members elected to each branch of the legislature, which it did not receive.

I think the appropriation was not for local or private purposes, and I will proceed to state my reasons for such conclusions.

1. It was not pretended that the purpose is *private*, personal or individual, because the appropriation is for the benefit of all those who choose or have occasion to navigate the Boquet river or Lake Champlain. The way is open to all, and no one is precluded from availing himself of the privilege. It is for the benefit and use of the public and the whole community.

2. Nor can it, in my opinion, be said to be for a *local* purpose. A local purpose would seem to be one, the benefit of which is confined to a particular locality or limited district. A local purpose has reference to the citizens or interests of a particular locality, and not to a large or extensive district, or to the community in general.

3. I do not see how, in this sense, or in any appropriate sense of the word *local*, the appropriation can be said to be for a local purpose. It is for improving the navigation of, and removing obstructions in a navigable river, and therefore a *public* river, in which the public have important rights and interests, over and above those of the riparian owners, emptying into Lake Champlain. Of course, it will be open and accessible to all such vessels as sail on the lake and can navigate its waters, and to all persons who do business on the lake. If the appropriation were for the improvement of the navigation of the lake, which we may take judicial notice, perhaps, is largely employed for interstate and international commerce, no one would claim that it was for a local or private purpose. Is it less so, where it is to improve the navigation of a tributary or inlet of the lake, communicating directly with the great body of the water of the lake and capable of transporting on its waters "coal, iron and

other commodities," such as are usually carried on the lake itself?

4. The improvement cannot be said to be for a "local purpose" simply because it is made, as it necessarily must be, in a particular or limited locality. All the improvements on the Hudson river would, if that were so, be subject to the same condemnation. It is not the place where the improvement is made, that is to confer upon it a local character or otherwise, but the purpose for which it is made. An improvement upon the State capitol at Albany, though located in and confined to Albany, would not be for a local purpose. An improvement deepening the channel of the Hudson river at Castleton, and removing any obstructions therefrom, would not be a local improvement or for a local purpose, because it would be for the general benefit of all craft of every description and of every nation navigating the Hudson river. .An improvement upon Lake Champlain, at Plattsburgh or Port Kent, being ports upon the lake, for the purpose of improving the navigation or removing obstructions, could not be condemned as a mere local improvement, because the effect would be to facilitate and increase the commerce of the whole lake, and thereby promote the general interests of the public. Nor, in my opinion, can the improvement of the navigation of the Boquet river at Willsborough falls and from that point, a distance of three miles to the lake, be adjudged a merely local improvement. It facilitates and enlarges to that extent the area of navigation. It in effect extends and increases by so much the banks of the lake. It may furnish desirable harbors for vessels upon the lake. There is nothing to show that it may not open in this way convenient and desirable communication to a back country, and access to mineral and other products not otherwise readily reached. Evidence of this fact may have been furnished to the legislature, and the presumption, I think, is in favor of the constitutionality of these proceedings. The comptroller undertakes to condemn the act and refuse obedience to its requirements by the matter appearing on the face of the bill.

The People *v.* Allen.

I think he has no right to do so, on the state of facts there appearing, without clear evidence on the face of the bill of its unconstitutionality, and this the act it seems to me is very far from showing. If it were thus apparently unconstitutional, and the comptroller apparently justified in refusing to obey the mandate of the legislature, the reason is removed when we come to know the facts, to wit: That the Boquet river is a navigable river, used in the transportation of coal, iron and other commodities from its mouth on Lake Champlain, to Willsborough falls. If we couple this with the presumption, as I think we must (except where there is affirmative evidence to the contrary), that the legislature acted upon sufficient evidence or authentic information of the non-local character of the improvement, there seems no reason why the comptroller should not now be required to give effect to the legislative will.

5. The foregoing observations lead to another view of the case already partially considered, that the improvement must not be pronounced a local one or made for local purposes, simply because it is upon a mere tributary of the lake. As before stated, it enlarges the borders or area of the lake; it increases its navigation; it promotes its commerce. The Erie canal would, I suppose, be regarded not only (as it plainly is) State property, but an improvement upon it as a State improvement made for the general benefit of the whole community. Would it be any the less so if made upon a tributary or feeder of the canal, if the object, and intent, and actual effect were to improve the navigation of the canal, or supply the needed quantity of water for its convenient and successful navigation. This improvement is, in effect, upon an inlet or feeder of the lake, supplying it with harbors, with tonnage, increasing the facilities, and enlarging the area of navigation. The river being navigable, the State has an interest and a property in the navigable waters, and in expending money, in a certain sense, and I think in a real sense, upon its own property. (*People* v. *Canal Appraisers*, 33 N. Y., 461; *Morgan* v. *King*, 35 N. Y., 454.)

6. Nor can the improvement be pronounced a merely local one, because its apparent benefits may not be so great or extensive as if prosecuted in some other localities. That is a matter for the judgment of the legislature. There must be a difference, in this respect, between one improvement and another. No two are exactly alike; all improvements cannot be concentrated upon a particular locality. The places where they are to be made, the extent of benefit which they are to confer, the precise character of that benefit must be left to the sound discretion and enlightened judgment of the legislature itself, elected for the very purpose of determining these questions, in all cases where the character of the improvement places it beyond the pale of a merely local purpose.

7. This leads to the remark, that on all these questions much is intended to be, and necessarily must be, left to the judgment of the legislature. Where the improvement ordered has certain ear-marks, giving it clearly a local character, I agree that the judicial department of the government, as the proper organ for the exposition of the law, may pronounce it unconstitutional. But where its local or general character depends upon a question, more or less nicely balanced, of the degree of navigability of the stream or body of water proposed to be improved, of the extent of navigation upon it, of the extent of the commerce already transacted upon its waters, or of the enlargements or additions to it, which may be rationally expected to flow from the consummation of the proposed improvement; in short, where it is a question of degree or extent, and not of the legal effect of a palpable fact, I think it falls within the domain of the legislative, and not of the judicial department of the government; and that it does not belong to an officer of the government, whose allocatur is essential to carry into effect the appropriation, to defy the mandate of the legislature; and where any of these questions depend upon considerations outside of the plain letter of the act itself, and if determined as questions of fact in a particular direction, will support the constitution·

ality of the act, I think we must presume they were so decided by the legislature as to uphold rather than defeat the validity of the enactment.

8. Hence the practice of the legislature, in times past, in disposing of questions of this description, though not absolutely controlling, is very fit to be considered, and entitled to considerable weight. I will refer to some instances of this character.

The various acts for the improvement of the navigation of the Hudson river, and for removing obstructions therein, between Troy and New Baltimore, and Troy and Coxsackie, and one of them "at or near Castleton," were all treated as public and not local improvements, and passed by a three-fifths instead of a two-thirds vote. (See Laws of 1863, chap. 122; id., 1864, chap. 105; id., 1865, chap. 561; id., 1866, chap. 491; id., 1867, chap. 647; id., 1852, chap. 365.) Various other acts were passed in the same way for improving the navigation of and removing obstructions in certain rivers, creeks and the tributaries thereof, some of these of very inconsiderable note, and quite a number of them simply for facilitating the floating of logs and lumber, as, for example, the following:

For improving the Black River canal, and the Erie canal feeder.

In relation to the Oneida river improvement.

For the improvement of Racket river and the tributaries thereof.

"          "          of the channel of Piseco river outlet.

"          "          of the outlet of Owasco lake.

"          "          of West Canada creek and its branches.

"          "          of the Sacandaga river.

"          "          of the Saranac river.

"          "          of the Salmon river.

"          "          of the Beaver river.

Many, or several, of these being merely for the floating of ogs and lumber down rivers navigable for ordinary water

craft. (See Laws of 1849, chap. 216; id., 1850, chaps. 249 and 693; id., 1851, chap. 492; id., 1852, chap. 193; id., 1853, chap. 452; id., 1854, chaps. 200, 162, 163 and 235.)

These references, which might be much multiplied, are sufficient to show what is and has been the sense of the legislature in regard to appropriations of this description.

It is undoubtedly true that several acts, which might probably have been valid under the three-fifths clause of the constitution, were (perhaps for greater caution) passed under the two-thirds clause. Such are some of the acts referred to by the learned counsel for the defendant; and some are perhaps debatable upon the question to which class they belonged, such as the "Act to open and improve the road through the oil spring Indian reservation, in the counties of Cattaraugus and Allegany," in which the opinion of Attorney-General TALCOTT is quoted, and the act to which he refers in his opinion, viz.: "An act for completing the military road leading from Plattsburgh to the county of Franklin;" but I think the large preponderance of the legislative action and interpretation is in favor of such a construction of this constitutional provision as would leave the present act untouched by any objection of that character.

There is, it must be admitted, considerable difficulty in defining the word *local* by a synonymous word, or by a phrase expressing its precise meaning. I agree that it was designed to express an idea somewhat different from that of *private*, and yet for some purposes the words are nearly synonymous. The words *general* or *common* will, it seems to me, express the opposite or converse idea to both those words. Both words are used for greater caution, and are doubtless somewhat different in meaning; a private purpose referring more particularly to a purpose for the benefit of an individual or a limited number of men, and a local purpose to a purpose for the benefit of a particular place or limited locality. As I have said, the opposite of these is general or common, but not necessarily so general or so common as to be absolutely universal. It is a question of

The People *v.* Allen.

degree.   To protect the appropriation from condemnation, under this clause of the constitution, the purpose must be in a certain sense public, but not necessarily for the universal benefit of the whole community, though I think the purpose of this bill can be said to be so when there is no restriction whatever to the enjoyment of the improvement. So it must be otherwise than merely local.   Its benefits must not be confined to a particular locality, though I am unwilling to say that a particular locality may not, from surrounding circumstances and particularly proximity to the place where the improvement is made, enjoy these benefits to a larger degree than the general public.   I am not quite prepared to adopt another construction which is contended for, to wit, that the test is whether the main or chief benefits will be enjoyed by a particular place or locality.   On the contrary, I am inclined to think that, in order to bring the case within the prohibition of this clause of the constitution, the direct benefits flowing from the improvement must be exclusively local.   If they are to a substantial or appreciable extent general and public, this quality puts it within the power of the legislature to pass the bill on these grounds, and hence to divest it of the objection of being a merely local bill ; and I think in such case we must presume that the legislature looked at this general or local feature of the bill in enacting it, for we are to presume in favor of and not against the constitutionality of a measure which has received the sanction of the legislature ; that is, if any view of it would be possible to make it constitutional consistently with the apparent purpose and tenor of the bill, we are to suppose the legislature adopted that view.

Again, as local does not necessarily mean limited to a spot of the smallest possible dimensions, and non-local or general does not necessarily mean universal space or space limited only by the exterior boundaries of the State, who is to judge when a bill comes up for action or for decision whether it is local or not ?   If palpably local, the courts may doubtless condemn it, but if general or for the general benefit in a

reasonably extended sense, should it not be left to the sound sense and ripe judgment of the legislature to determine as to the degree in which a bill must be freed from the objection of being for a local purpose. At least, I think its unconstitutionality should be clear and apparent before it is condemned by the courts.

I think there is no force in the suggestion that the remedy by mandamus is not proper. It is, I think, the one usually resorted to, and perhaps no other is available. Here is a fund to which the relators have a clear legal right; one department of the government (the legislative) has so declared; another (the judicial) concurs in the same view; and I think the comptroller, who for this purpose is the disbursing officer of the government funds, has no right to refuse payment, and if he does refuse, should be compelled by mandamus to perform his duty.

I think a peremptory mandamus should issue against the defendant requiring him to pay the $2,500 demanded.

INGALLS, J., concurred.

PECKHAM, J., read a dissenting opinion.

Motion granted.