People *ex rel.* Miller agt. Green.

## N. Y. SUPERIOR COURT.

THE PEOPLE *on the Relation of* CHARLES E. MILLER agt. ANDREW H. GREEN, Comptroller, &c., and ABRAM L. EARLE, Auditor, &c.

The *relator* claimed the balance of an unpaid salary of $4,820.17 for services as "counsel to the commissioners of taxes and assessments, in the city of New York," for part of the years 1872 and 1873, which the defendants refused to pay.

It did not appear that the relator's salary was provided for in any of the appropriations made for those years to the commissioners of taxes and assessments; and the amounts apportioned to that department are required to be specifically applied to the purposes specified therein. The relator can have, therefore, no remedy by mandamus; but is entitled to have his claim audited, and a mandamus lies to the auditor to adjust the demand.

*Special Term, February,* 1874.
*Before* MONELL, *Ch. J.*

APPLICATION for a peremptory mandamus.

The relator alleged in his affidavit that in November, 1872, he was duly appointed "counsel to the commissioners of taxes and assessments, in the city of New York," under the provisions of the act of May 17, 1869; that he thereupon entered upon the duties of his office, and continued to discharge them to and including the 9th day of May, 1873; that his salary as such counsel was fixed by the board of supervisors at $10,000 per annum. He further alleged that there was due to him of unpaid salary the sum of $4,820.17, with interest from November 25, 1872, which Earle, as auditor, has refused to audit, and Green, as comptroller, has refused to pay.

Upon this the comptroller and auditor were ordered to show cause why they should not audit and pay the claim, and

the comptroller showed for cause that there was no appropriation of money in the treasury to pay said claim.

It was, thereupon, referred to a referee to take proof and report the same to the court.

The evidence taken by the referee establishes the following facts:

In December, 1871, the commissioners of taxes and assessments delivered to the board of apportionment an estimate of the expenses of the commission for the year 1872, as follows:

| | |
|---|---:|
| Four commissioners, at $10,000 each......... | $40,000 00 |
| Surveyors, secretary, deputies, clerks, &c..... | 167,000 00 |
| | $207,000 00 |

In April, 1872, the commissioners delivered to the board an estimate of expenses of their department, from May 1st to December 31st, 1872:

| | |
|---|---:|
| Four commissioners, at $10,000 each per annum, | $26,666 67 |
| Surveyors, secretary, deputies, &c., stationery, &c................................. | 136,233 33 |
| | $162,900 00 |

The board of apportionment, in May, 1872, by resolution, did "apportion and set apart the sum authorized to be apportioned or raised by authority of chapter 444 of Laws of 1871, to and for the various objects and purposes of the government of the city and county of New York for 1872, as hereinafter named," viz., after a number of others:

*Commissioners of Taxes and Assessments.*

| | |
|---|---:|
| Four commissioners, at $10,000 each......... | $40,000 00 |
| Deputies, clerks, &c...................... | 134,040 00 |
| | $174,040 00 |

Of this total sum there remained of the $40,000 the sum of $11,146.10, and of the $134,040 the sum of $82.13. Nathaniel Sands, one of the commissioners, had not been paid his salary for the year 1872, and the comptroller claims that the balance of $11,146.10 is still applicable to that claim.

For the year 1873 the commissioners delivered their estimate for the expenses of that year, making an aggregate of $222,700, which include $40,000 for commissioners, the balance being for deputies, clerks, &c.

In January, 1873, the board of apportionment apportioned the following amounts for the following purposes, viz. :

\* \* \* *Commissioners of Taxes and Assessments.*

| | |
|---|---|
| Four commissioners, at $10,000 each......... | $40,000 00 |
| Secretary, surveyor, deputies and clerks ...... | 118,000 00 |
| | $158,000 00 |

Of this total sum there remained of the $40,000 the sum of $2,423.42. King, one of the commissioners, having died during, the year the balance would have been applicable to his successor, had one been appointed. None was appointed.

The whole amount ($118,000) for secretary, surveyor, &c., had been paid out of the treasury.

Upon the report of this evidence the relator renewed his motion for a peremptory mandamus.

Mr. W. C. TRULL, *for the relator.*
Mr. ANDREWS, *for the comptroller.*

MONELL, *Ch. J.*—It was conceded by the respondent's counsel that the relator had a legal claim to be paid for his services, as counsel to the commissioners of taxes and assessments. He was appointed by competent authority; his salary was paid by the board of supervisors; and he had performed the duties assigned to his office. Nor was it questioned that

a mandamus would lie to compel the payment of the claim, if the disbursing officer has funds in his possession, or under his control, which he is authorized to apply to the purpose.

He is a public officer and subject to the mandatory writ, when there is a clear legal right to payment (*People ex rel. Adsit* agt. *Allen*, 1 *Lans.*, 248 ; *People, &c.*, agt. *Allen*, 42 *N. Y. R.*, 404.)

The defense interposed in this case is that there are no funds in the treasury to pay the claim. In other words, that there is no appropriation, out of which the comptroller is authorized to take the money.

That there is no appropriation applicable to the payment of the claim is a complete defense to the motion (*People* agt. *Burrows*, 27 *Barb*, 89 ; *S. C., affirmed*, 17 *N. Y. R.*, 235). It may not be to an *action* against the city.

The question, therefore, to be examined is, whether there is any appropriation, out of which the comptroller is authorized to make payment.

The relator claims that the unexpired balance of $11,146.10, of 1872, and of $2,423.42, of 1873, are each applicable to his demand. That must depend somewhat at least upon whether the appropriations for these years were general and not specific. If they were merely appropriations of sums of money for the expenses of the department generally, then it is probable that the comptroller would be authorized and bound to pay out of those appropriations, without discrimination, any and all legal claims of the department, so long as any portion of the appropriation remained. He would have no right to make specific apportionments or set apart special sums for particular officers or persons in the department, and then make such separate appropriations the basis of his refusal to pay other legal claims against the general fund.

On the other hand, if such specific and separate appropriations have actually been made, not by the comptroller but by a competent power behind him, the comptroller has no right whatever to divert them, or any part of them, from such

People *ex rel.* Miller agt. Green.

specific and separate purpose.   So far salaries and compensation, separately designated in the appropriation, must be protected in the treasury for the person or persons occupying the offices to which the salary or compensation is attached. It would not only be unjust towards such officials to deprive them of the security thus acquired, but it would, in my judgment, be a violation of duty and a usurpation of power for the comptroller to make any other or different application of the money.

The power to make and the mode of making appropriations for the expenses of the city and county government is determined by law.   The mayor, comptroller, &c., are directed to make and agree upon an estimate of the various sums of money which will be required to defray all such expenses of the various boards, commissions and departments; and thereupon to fix and determine the amount thereof, "which amount, when so established, shall thereby become *appropriated* as the amount required, and shall be certified to the board of supervisors," which board is directed to raise the same by tax (*Laws* 1871, *p*. 1246, § 101).   A subsequent chapter (583) directs such board of estimate and apportionment to *apportion* and " *set apart* " to the various departments the sums, &c.

It is understood that the board, to guide and enlighten its judgment, and as a basis of appropriation, direct estimates to be furnished, by each head of department, of the probable expenses of his department for the current ensuing year. Such estimates were furnished by the tax commissioners for the years 1872 and 1873, and, as we have seen, the items of expenses were separately stated.   Those estimates furnished the board with the amount and purpose of the expenditure, and following as to purpose, if not as to amount, apportioned an aggregate sum each of those years, but in such a form as necessarily to require a specific application to each separate item.

The aggregation of the apportionment to " deputies, clerks,"

&c., would not require, or probably allow, of a discrimination in favor or against any particular class. All and each are embraced in the designation, and none have a privity or preference over others.

But the apportionment to the four commissioners nearly aggregate their salaries, and leave it a separate and specific appropriation to and for them, and from whom the comptroller has no authority to divert it by paying out of it any other expense of the same department. The right to such appropriation, by reason of the form in which it has been made, has given to the commissioners a *quasi* vested claim to it, of which they cannot be legally deprived; and it would be no answer to a mandatory writ, on behalf of these commissioners, for the comptroller to aver that other expenses of the department had exhausted the appropriation.

Nor is the question affected by the fact that one of the commissioners has not demanded his salary; and another having deceased, a portion of the sum set apart for salaries cannot be demanded. These circumstances do not unfix the appropriation and set it adrift in the city treasury. It remains intact subject, perhaps, to the power of ultimate disposition; and that power is probably in the comptroller, he being authorized (*Laws* 1872, *chap.* 9) to transfer appropriations.

In *Green* agt. *The Mayor, &c., of New York* (5 *Abb.*, 503), the court say: " The defendants, when they receive money from taxes or any other source of revenue, which they are bound to apply to any special purpose, may, by action, be compelled to pay such money to the purposes contemplated, *upon the principle that they hold the money so received by them to be so applied.*"

It does not appear that the relator's salary was included in either the estimate or the appropriation for the years 1872, 1873. It is not mentioned in terms, nor is it admitted to be included among " *deputies or clerks.*" It may, therefore, safely be said that it is not provided for in the appropriations of those years; and if I am correct in the position, that the

People *ex rel.* Miller agt. Green.

amounts apportioned to the department must be applied to the purposes specified, the relator can have no remedy by mandamus.

He is entitled, however, to have his claim audited, and a mandamus lies to the auditor to adjust the demand; and so much of the motion is granted.

The motion, as against the comptroller, must be denied, with costs.